**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JERI'YAH FORD,

                    Plaintiff,

    v.                                      1:25-cv-00364 (AMN/DJS)

TROY CITY SCHOOL DISTRICT *et al.*,

                    Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **MILLS LAW GROUP PLLC** | **JASPER LEE MILLS, III, ESQ.** |
| 240 State Street – Suite 4 | |
| Schenectady, New York 12305 | |
| *Attorneys for Plaintiff* | |
| | |
| **SILVERMAN & ASSOCIATES** | **LEWIS R. SILVERMAN, ESQ.** |
| 445 Hamilton Avenue – No. 1102 | **VALENTINA LUMAJ, ESQ.** |
| White Plains, New York 10601 | |
| *Attorneys for Defendants Troy City* | |
| *School District and Richard Hurley* | |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On January 29, 2025, plaintiff Jeri'yah Ford ("Plaintiff") commenced this action in New York State Supreme Court against defendants Troy City School District, Richard Hurley (together, "Defendants"), and the City of Troy, pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI") and New York State law.  Dkt. No. 2 ("Complaint").  On March 24, 2025, Defendants removed this action to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1331.  Dkt. No. 1.

Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Rule

12 of the Federal Rules of Civil Procedure ("Rule 12").  Dkt. No. 14 ("Motion"); *see also* Dkt. Nos. 20, 23.  For the reasons set forth below, the Motion is granted as to Plaintiff's Title VI claim; Plaintiff's New York State law claims are remanded to New York State Supreme Court; and Plaintiff's counsel is ordered to show cause why he should not be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").

## II.     BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties

Plaintiff alleges that he "is an African American male" and a resident of New York State. Dkt. No. 2 at ¶ 2.  In June 2022, he was a minor student at Troy High School.  *Id.* at ¶¶ 6, 8.

The City of Troy is a municipality in New York State.  *Id.* at ¶ 4.  Defendant Troy City School District is a school district in Troy, New York, and employed Defendant Hurley as a principal's assistant at Troy High School.  *Id.* at ¶¶ 3, 6.  Defendant Hurley is sued in his individual capacity.  *Id.* at 1.[1]

### B.  Plaintiff's Factual Allegations

Plaintiff alleges that during a lunch period on June 3, 2022, a student and Defendant Hurley were "in an altercation" "which became physical."  *Id.* at ¶ 7.  Plaintiff sought to intervene "by

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

removing" the student. *Id.*

Seemingly after leaving the area, Plaintiff contacted his father, who also worked at the Troy City School District. *Id.* at ¶ 8. Plaintiff and his father then went to the main office of Troy High School, where they met Defendant Hurley. *Id.* at ¶ 9. Plaintiff alleges that Defendant Hurley suspended him for five days without any justification. *Id.* During this interaction, Plaintiff alleges that Defendant Hurley "was extremely aggressive toward both Plaintiff and his father" and "repeatedly demeaned the Plaintiff in front of his peers and school staff[.]" *Id.*; *see also id.* at ¶¶ 10, 15.

Plaintiff does not allege Defendant Hurley's race but alleges that "Defendant Hurley tried to justify his conduct by stating that he has 'black friends and family members' and spoke about things he has done for black people." *Id.* at ¶ 11.

Plaintiff alleges various emotional injuries as a result Defendant Hurley's purported conduct. *Id.* at ¶¶ 12-13. Plaintiff also alleges that "[i]t is believed the Defendant Hurley has engaged in similar behavior in the past and remains employed by the Troy City School District." *Id.* at ¶ 16.

### C. Plaintiff's Legal Claims

Based on Plaintiff's factual allegations, he asserts six claims in the Complaint: under federal law, (i) discrimination based on race in violation of Title VI, *id.* at ¶¶ 34-38; and, under New York State law: (ii) assault, *id.* at ¶¶ 17-23; (iii) negligent infliction of emotional distress, *id.* at ¶¶ 24-27; (iv) intentional inflection of emotional distress, *id.* at ¶¶ 28-33; (v) discrimination in violation of the New York State Human Rights Law, *id.* at ¶¶ 39-42; and (vi) negligent training, retention, and supervision, *id.* at ¶¶ 43-47. Plaintiff seeks $4,000,000 in damages, $1,000,000 of which is for an unidentified "[s]eventh" claim. *Id.* at 7-8.

3

### D.  Procedural History

On January 29, 2025, Plaintiff commenced this action in New York State Supreme Court, Rensselaer County.  Dkt. No. 2.  Following service of the Complaint on March 3, 2025, Defendants filed a notice of removal in this Court on March 29, 2025.  Dkt. No. 1 at ¶¶ 5-8; *see also* 28 U.S.C. § 1446(a)-(b).  On April 2, 2025, the parties stipulated to the discontinuance of this action against the City of Troy, a stipulation that the Court subsequently so-ordered.  Dkt. Nos. 9-10.

On April 11, 2025, Defendants proposed an extended schedule to file and fully brief a motion to dismiss.  Dkt. No. 11.  Defendants indicated that they had attempted to confer with Plaintiff's counsel on numerous occasions, but had received no response.  *Id.*  On April 24, 2025, the Court so-ordered the proposed schedule without objection.  Dkt. No. 12.

On May 7, 2025, Defendants filed the Motion as directed.  Dkt. No. 14.  On June 4, 2025, shortly before the deadline to oppose the Motion, Plaintiff requested, with Defendants' consent, a further extension of time (until July 8, 2025) to respond.  Dkt. No. 16.  The Court granted that request.  Dkt. No. 17.

Plaintiff did not file any response on July 8, 2025.  On July 22, 2025, Defendants requested that the Motion be deemed unopposed.  Dkt. No. 18.  Several hours later, Plaintiff's counsel requested that the Court accept a late filing.  Dkt. No. 19.  Plaintiff's counsel explained that "my paralegal mistakenly read the Court's scheduling Order and reflected that the Plaintiff deadline [sic] to file a response was July 22, 2025, rather than the correct deadline of July 8, 2025."  *Id.* Several minutes later, Plaintiff's counsel filed a response to the Motion.  Dkt. No. 20 ("Response").

The Response states that it is made on Plaintiff's behalf, "by and through his attorney Jasper Mills, Esq.[,]" who "hereby deposes and says subject to the penalties of perjury" the statements contained in the ensuing sixty-eight paragraphs.  *Id.* at 1.  The first paragraph states in pertinent

part that: "I represent the Plaintiff in the matter captioned above.  I am fully familiar with he [sic] facts and circumstances of this matter . . . . Statements regarding legal authority are made upon information and belief, based upon legal research."  *Id.* at ¶ 1.  The Response purports to be dated July 16, 2025, six days before it was filed.  *Id.* at 18.

On July 23, 2025, Defendants reiterated their position that the Motion should be deemed unopposed, now on the basis that Plaintiff had not filed a timely response.  Dkt. No. 21.  Alternatively, Defendants requested an extension of time to file a reply if the Court accepted Plaintiff's late submission.  *Id.*  The Court accepted Plaintiff's late submission and granted Defendants an extension to file their reply, which Defendants timely filed.  Dkt. Nos. 22-23.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

5

*Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV.    DISCUSSION

The Motion sets forth numerous reasons why all of Plaintiff's claims should be dismissed, including his single federal claim for discrimination based on race in violation of Title VI. *See generally* Dkt. No. 14-3 at 11-23.

### A.  Title VI

Defendants argue that Plaintiff's Title VI claim against Defendant Hurley fails as a legal matter. *Id.* at 22-23. In response, "Plaintiff concedes that Title VI does not authorize individual liability[.]" Dkt. No. 20 at ¶ 67. Based on the parties' agreement, the Title VI claim against Defendant Hurley is dismissed as abandoned. *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.") (citation omitted); *see also, e.g., Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018) ("Defendants are correct that Title VI does not provide for individual liability. . . . Accordingly, to the extent that Plaintiff intended to assert Title VI claims against the individual Defendants, those claims are dismissed.") (citation omitted); *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 593 (S.D.N.Y. 2011) ("The proper defendant on a Title VI claim is the entity that receives federal funding. . . . A defendant cannot be sued in individual capacity under the law because he does not

receive federal funding assistance.") (citations omitted).

Defendants further argue that, pursuant to the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), emotional distress damages are not recoverable under Title VI. Dkt. No. 14-3 at 21-22. Plaintiff again agrees. Dkt. No. 20 at ¶ 64. Based on the parties' agreement, Plaintiff's claim for emotional distress damages under Title VI is also dismissed as abandoned. *Colbert*, 824 F. App'x at 11; *see also, e.g., Cummings*, 596 U.S. at 217-18, 230 ("Pursuant to [the Spending Clause] . . . , Congress has enacted four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds. Title VI of the Civil Rights Act of 1964 forbids race, color, and national origin discrimination in federally funded programs or activities. . . . Title IX of the Education Amendments of 1972 similarly prohibits sex-based discrimination . . . while the Rehabilitation Act bars funding recipients from discriminating because of disability. . . . Finally, the Affordable Care Act outlaws discrimination on any of the preceding grounds, in addition to age, by healthcare entities receiving federal funds. . . . [W]e hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here.") (citations omitted).

Plaintiff goes on to argue that *Cummings* "does not bar all forms of relief" and that "Plaintiff seeks injunctive and declaratory relief, compensatory damages (where appropriate), and punitive damages." Dkt. No. 20 at ¶¶ 64-65. As noted earlier, *see supra* Section II.C, the Complaint seeks $4,000,000 in damages but does not request any injunctive or declaratory relief, *see generally* Dkt. No. 2. And Plaintiff "cannot (as a party represented by counsel) constructively amend the [ ] Complaint merely by making arguments in a response brief." *Lama v. Meta Platforms, Inc.*, 732 F. Supp. 3d 214, 223 (N.D.N.Y. 2024). Further, even if the Complaint specified punitive damages—which it does not—punitive damages are also not recoverable under

Title VI.  *See, e.g., Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024) ("Indeed, the Supreme Court has already addressed [Plaintiff]'s argument in the context of punitive damages.  In *Barnes v. Gorman*, the Supreme Court held that punitive damages were not available under the Title VI implied cause of action[.]") (citing 536 U.S. 181, 187 (2002)).

Finally, Defendants argue that Plaintiff's conclusory allegations are insufficient to state a discrimination claim under Title VI.  Dkt. No. 14-3 at 19-21.

"Title VI of the Civil Rights Act of 1964 prohibits federally funded programs from discriminating on the basis of race, color, or national origin and provides an implied private right of action."  *Bloomberg v. N.Y. City Dep't of Educ.*, 119 F.4th 209, 210 (2d Cir. 2024) (citing 42 U.S.C. § 2000d).  "To state a discrimination claim under Title VI of the Civil Rights Act of 1964, [a plaintiff] must allege that 'the defendant discriminated against [her] on the basis of [a protected class], that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions."  *Rodrigues v. City of New York*, 835 F. App'x 615, 618 (2d Cir. 2020) (second and third alterations in original) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)).

The Court agrees with Defendants that Plaintiff's threadbare allegations regarding his suspension and subsequent conversation with Defendant Hurley do not plausibly allege such a claim.  *See, e.g., Vengalattore v. Cornell Univ.*, 36 F.4th 87, 111 (2d Cir. 2022) ("[The Complaint's] few factual allegations concerning persons of Indian ethnicity fail to reach even the minimal level needed to support a plausible inference that [plaintiff]'s discipline was also motivated by his national origin.  The district court did not err in dismissing, for failure to state a claim, so much of the Complaint as purported to allege discrimination in violation of Title VI."); *King v. Lipsius-Gembola*, No. 22-cv-259, 2023 WL 9470280, at *4 (W.D.N.Y. May 30, 2023)

("Because [plaintiff]'s conclusory allegations of race discrimination fail to allege that [defendant] discriminated against her *on the basis of race*, [plaintiff] necessarily also fails to allege that discrimination was intentional and motivated Defendant's actions.") (citation omitted).

Plaintiff's arguments to the contrary are superficial and legally unsupported. *See generally* Dkt. No. 20 at ¶¶ 59-65. First, he asserts that "[u]nder Title VI's implementing regulations, a claim may be based on practices that have an unjustifiable disparate impact on minorities, even without proof of intentional discrimination." *Id.* at ¶ 60. But Plaintiff does not plausibly allege that his lone interaction with a single school district employee on June 3, 2022 constituted, or was the result of, any such practice. *See generally* Dkt. No. 2 at ¶¶ 6-11. Plaintiff's conclusory assertion that "[i]t is believed" that this employee "engaged in similar behavior in the past" does nothing to remedy these pleading deficiencies. *Id.* ¶ 16. And even if Plaintiff had adequately pled a disparate-impact theory of discrimination, that still would not salvage his Title VI claim. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) ("*Sandoval* held that private parties may not invoke Title VI regulations to obtain redress for disparate-impact discrimination because Title VI itself prohibits only intentional discrimination.") (discussing *Alexander v. Sandoval*, 532 U.S. 275 (2001)); *Joseph v. Metro. Museum of Art*, 684 F. App'x 16, 17 (2d Cir. 2017) ("[Plaintiff] argues that he should have been allowed to pursue his Title VI claims under a disparate-impact theory . . . . [Plaintiff]'s argument is foreclosed by Supreme Court precedent holding that Title VI prohibits only intentional discrimination.") (citing *Jackson*, 544 U.S. at 178).

Second, Plaintiff argues that while "Defendant Hurley only made the [alleged] statement once," it was "gratuitous and irrelevant." Dkt. No. 20 at ¶ 61; *see also Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 347 (S.D.N.Y. 2014) ("A single comment—even if offensive—is not sufficient to uphold a Title VI claim on its own.") (citation omitted). Regardless,

9

the alleged statement fails to establish that Plaintiff was intentionally discriminated against based on his race. *Roggenbach*, 7 F. Supp. 3d at 347-48 ("Plaintiff's bare allegations are insufficient to sustain a Title VI claim. Even if Plaintiff's allegations of two additional comments are true, they do not rise to the severity required under Title VI. The fact remains that Plaintiff has offered no evidence to suggest that discrimination was a 'substantial or motivating factor' in Defendants' decision to take disciplinary action against Plaintiff.").

Third, Plaintiff argues that authority from the United States Court of Appeals for the Third Circuit demonstrates the viability of his claim, because "the court found that the school principal's racially derogatory statements towards African-American students supported an inference that disciplinary actions were motivated by race, which could be actionable under Title VI § 1983 Equal Protection claims [sic]." Dkt. No. 20 at ¶ 61 (citing *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517 (3d Cir. 2011)). As an initial matter, Plaintiff's description of *Whitfield* shows that it is distinguishable from his own allegations, which involve a single student and a single "statement by the defendant[.]" *Id.* Moreover, the appellate panel in *Whitfield* affirmed the district court's grant of "summary judgment in favor of Defendants on all claims." *Whitfield*, 412 F. App'x at 519. Also contrary to Plaintiff's argument, those claims did not include claims under either 42 U.S.C. § 1983 or the Equal Protection Clause, *id.*, which, in any event, are not claims that Plaintiff has brought, *see generally* Dkt. No. 2. As for the "racially derogatory statements" at issue in *Whitfield*, those were made to a single student *by other students* and not by any school employee, let alone an assistant principal. *See, e.g., Whitfield*, 412 F. App'x at 519-520 (detailing the "series of events" from which plaintiffs' claims arose); *id.* at 521-22 ("[A] school may only be held liable for a Title VI claim of student-on-student racial discrimination when the school's response is 'clearly unreasonable in light of the known circumstances.' . . . Accordingly, Plaintiffs' Title VI

10

hostile environment claim fails as a matter of law.") (citations omitted). And the case's passing reference to a principal also does not support Plaintiff's characterization. *Id.* at 519. In short, the Court agrees with Defendants that this case provides no support for Plaintiff's position. Dkt. No. 23 at 12 ("[T]he Court's decision makes no reference to any racially derogatory comments by the school principal and the Court ultimately upheld the lower court's dismissal of plaintiff's Title VI claim.").

Plaintiff's fourth argument is that other courts (specifically the United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Kansas) have found certain conduct, again purportedly similar to Plaintiff's allegations, sufficient to state a Title VI claim. Dkt. No. 20 at ¶¶ 62-63. Defendants note that their "counsel was unable to locate these cases." Dkt. No. 23 at 12. Nor could this Court. As a result, Plaintiff has failed to provide a single case to support his position that he has plausibly alleged a claim under Title VI.

For all of these reasons, the Court grants the Motion as to Plaintiff's Title VI claim.

## B. New York State law claims

The Complaint does not state a viable federal claim, and neither the Complaint nor the notice of removal provide a basis for diversity jurisdiction. *See generally* Dkt. Nos. 1-2. Without original jurisdiction, and after considering the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under New York State law. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013); *see also Idlibi v. Conn. Dep't of Pub. Health*, No. 24-720-cv, 2024 WL 4645698, at *3 (2d Cir. Nov. 1, 2024) (summary order) ("[W]e agree with the District Court that [plaintiff]'s Title VI claims fail as a matter of law. Finally, with no federal claims remaining, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over [plaintiff]'s state law claims.") (citations

11

omitted); *Yang v. Eastman Sch. of Music*, No. 21-1482-cv, 2022 WL 1040418, at *2 (2d Cir. Apr. 7, 2022) (summary order) ("Plaintiffs' Title VI claim was properly dismissed.  Finally, because the District Court properly dismissed Plaintiffs' federal claims, we conclude that it did not abuse its discretion in declining to exercise supplemental jurisdiction over their state law claims.") (citation omitted).

As a result, the Court remands Plaintiff's state law claims to New York Supreme Court, Rensselaer County.  *See, e.g., Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("When a case has been removed from state court to federal court, '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.'") (alteration in original) (quoting 28 U.S.C. § 1447(c)).

**C.  Order to Show Cause**

As a general matter, "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable." *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024) (alteration in original) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).  More specifically, Rule 11

> provides that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney "certifies that to the best of [her] knowledge, information, and belief," formed after a reasonable inquiry, the filing is: (1) "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) supported by available evidence, or evidence likely to be discovered on further investigation."

*Kyros Law P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023) (alterations in original) (quoting  Fed. R. Civ. P. 11(b)).  As the Second Circuit has also made clear:

> At the very least, the duties imposed by Rule 11 require that attorneys read, and

12

thereby confirm the existence and validity of, the legal authorities on which they rely.  Indeed, we can think of no other way to ensure that the arguments made based on those authorities are "warranted by existing law," Fed. R. Civ. P. 11(b)(2), or otherwise "legally tenable." *Cooter & Gell*, 496 U.S. at 393[ ].  As a District Judge of this Circuit recently held when presented with non-existent precedent generated by ChatGPT: "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.  An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata v. Avianca, Inc.*, [678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)].

*Park*, 91 F.4th at 615 (additional citation omitted).  A court may "initiate sanctions *sua sponte* by issuing an order 'to show cause why conduct specifically described in the order has not violated Rule 11(b).'"  *Kyros Law*, 78 F.4th at 543 (quoting Fed. R. Civ. P. 11(c)(3)).

As such, Mr. Mills is hereby ordered to show cause, in writing by March 20, 2026, why he should not be sanctioned pursuant to Rule 11(b) for including and relying on fabricated caselaw in the Response.  Dkt. No. 20 at ¶¶ 62-63.  Mr. Mills is directed to address whether he used artificial intelligence in drafting the Response and what steps he took to confirm the existence and validity of the caselaw.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion dismiss, Dkt. No. 14, is **GRANTED as to Plaintiff's Title VI claim**, as set forth in Section IV.A of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's Title VI claim is **DISMISSED**; and the Court further

**ORDERS** that this action is **REMANDED** to the Supreme Court of the State of New York, Rensselaer County; and the Court further

**ORDERS** that Jasper L. Mills, Esq., shall **SHOW CAUSE**, if there be any, to this Court by submission on papers as ordered herein, before the Honorable Anne M. Nardacci, United States

District Court Judge at the United States Courthouse, 445 Broadway, Albany, New York, why he should not be sanctioned pursuant to Rule 11(b), as set forth in Section IV.C of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's written submission shall be filed on or before **March 20, 2026**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 4, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

14